Curia, per O’Neall, J.
The bill is filed by Newman and his wife, (who was one of the children and legatees of the testator,) against the executor and executrix, and the other legatees, for an account and settlement of the estate. The bill states “ that they (the complainants) are not particularly informed what advancements were made by the said William Wilbourne to his children, but they have understood, and so charge, that the said William Webb received from the said William Wilbourne, a short time before his death, three negroes, to wit: Tish and two children; but whether the said negroes were sold by the said William Wilbourne to the said William Webb, or intended as an advancement to his son-in-law, they are not sufficiently informed on the subject to state *positively.” The prayer for answer, requires all the children except Webb and wife, to state what advancements were made to them by the testator; and from them it requires an answer, “ whether he (Webb) did not receive the negroes above mentioned, from the said William Wilbourne, some short time before his death.” The answer of the defendants Webb and wife, states that they are advised that no advancements made by the testator, in his lifetime, to his children, can be taken into computation and settlement of his estate, under the said will; they therefore on that ground alone, decline answering that part of the bill which charges a gift, made by way of advancement, to these defendants.”
It was referred to the Commissioner,'to ascertain the amount of the estate of William Wilbourne, deceased, and what advancements, (if any) were made to his children by the said William Wilbourne in his lifetime. Under this order the Commissioner made up the accounts of the executor and executrix, thereby ascertaining the amount of the estate for division under the will, and reported that he had not ascertained that any advancements were made by the testator to any of his children, in his lifetime ; but that there was evidence establishing a debt of §150 against the defendant Webb. This report which was made up to June Term, 1831, was excepted to by Webb. The Chancellor, on a review of the evidence, thought it sufficient to establish the debt, and that the Commissioner was authorized to make the charge, but sent back the report to be corrected in some particulars. The corrections were made, and at June Term, 1832, the report was directed to be modified, and was then confirmed, establishing abalance of §484 66 against Webb, after deducting his wife’s share of her father’s estate. It is most obvious, I think, on looking into the bill, answer and order of reference, that it was originally contemplated to make the defendants Webb and wife, account for Tish and her children, as an advancement. The doctrine of advancements applies, however, solely to cases of intestacy; and it has been, over and over again, held in this State, that even in a case of partial intestacy, a child could not be compelled to account for advancements made to him, by his parent, in his lifetime. But when there is a total testacy, and nothing upon *which the will does not operate, there never was a question that a legatee could not be compelled to account for advancements, unless the will directed it to be done.
I have looked into the evidence contained in Chancellor DeSaussure’s *13 decree, with a view of ascertaining how the fact really was, whether Tish and her children were or were not, an advancement; and I think it is impossible to say from it, whether they were given or loaned. They went into Webb’s possession after his marriage, and were sold to pay his debt, by the consent of the testator, who executed a bill of sale for them. If the bill had alleged that they went into his possession as a loan, and this had been the issue between them, I should have been contented to resolve my doubts by the Chancellor’s decision. It is, however, alleged in the bill, that they went into his possession as an advancement, or by a sale. There is no pretence that they were sold to Webb. It is now alleged that they wei’e sold by the testator,-to pay Webb’s debt, and that he is therefore indebted to the testator in the amount of their price, for so much money paid, laid out and expended at his request. This may, for aught I know, be the truth of the ease ; but there is no charge in the bill authorizing such a demand to be set up. If there had been, I know of no right which one legatee has to call upon another to account for and pay a debt to the estate. Generally the executors at law have an ample remedy for the collection of their testators’ credits; in some cases of bills, either by or against them, for a final settlement, they might be allowed to set up and claim from a legatee, an account for debts which he owed to them as executors, or to their testator, in his lifetime. But to return to the merits of the charge against Webb. The decree assumes that the negroes were loaned to Webb ; if so, it was a loan without hire. When 'was it to terminate ? — at the testator’s death, or at the time his estate was to be divided, or upon demand ? If the loan of the negroes was without hire, must not the amount for which they were sold stand upon the same footing as a loan without interest, until payment was demanded ? This, I think, must be the result, unless there was some contract varying the legal effect of the sale of the goods loaned — none appears to have been proved; and *yet the Commissioner has charged interest, from the 24th of February, 1828. It may be that payment was demanded, but I can discover no evidence of a demand, until the bill was filed in March, 1831.
The evidence of the executrix, Mrs. Carey Wilbourne, was competent to prove the debt, due by Webb, if it had been properly before the Court of Equity: for she has no interest in the residuary estate, of which it would be a part. But the fact, that she may be sworn here, is, perhaps, a strong reason why this Court should not assume cognizance of this part of the case, until the debt is established at law. For there she must be a plaintiff, and could not then be examined, as a witness. To permit the ease to be taken from the Law Court, and brought into Equity, and then to make competent, a witness not eompetant at law, might constitute a dangerous precedent.
As to the declarations of Mr. Wilbourne, that he had not given the negroes to Webb, that he had only loaned them, or that Webb was to pay, or account for them, they were incompetent evidence. In the case of Sims v. Saunders, State Rep. 374, Judge Nott states the rule. He says, “ as a general rule of law, a person who has made a gift, or done any other act, cannot be permitted to impeach it, by his after declarations. If, therefore, the gift in this case had been proved, the declarations of the donor ought to have been rejected; but the proof was imperfect, and *14 inconclusive. If the plaintiff had relied alone on the evidence of the gift and delivery, without resorting to subsequent declarations on her part, the defendant could not have been permitted to give such evidence.” As I understand this case, the defendants relied on the fact of a delivery of the possession, as evidence of a gift; and if so, no subsequent declarations of the testator, could be competent to vary the legal consequences.
Pope, for the Plaintiff,
Bausket & Wallace, for the defendants.
From every view of the case, I am not satisfied to affirm the decree as it stands; it may be that it is right, but I cannot satisfy myself that it is so, from the lights which have been afforded. I think the executor and executrix ought to recover the debt at law, and then account to the complainants and the defendants, Webb and wife, for their shares in this case, in this Court.
*It is, therefore, ordered and decreed, that so much of the Chanellor’s decree, as makes the defendant, Webb, liable for the debt of $750, with the interest thereon, be reversed, and that the executor and executrix do forthwith proceed at law, to sue for, and recover the same, (if it can be done) — that until the final decision of the same at law, and the further order of this Court, they be permitted to retain, in their hands, the share of the estate of William Wilbourne deceased, to which William Webb and wife are entitled ; and if, upon the trial at law, they should recover the said debt, then, that they do deduct, from the said recovery, the said shares with the interest which shall accrue in the mean time; but if they should fail to recover the same, then that the defendants, Webb and wife, have leave in this case, to move the Circuit Court of Equity, for a decree against the executor and executrix, for the said share and interest.
Johnson, J. concurred,
Harper, J. absent.